### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | |
|---|---|
| CHERRY CANYON RESOURCES, L.P. Individually and on Behalf of All Those Similarly Situated,<br><br>     *Plaintiff*,<br><br> vs.<br><br>HALLIBURTON COMPANY; HALLIBURTON ENERGY SERVICES,  INCORPORATED; SCHLUMBERGER, N.V.; SCHLUMBERGER HOLDINGS  CORPORATION; BAKER HUGHES INCORPORATED; and BJ SERVICES COMPANY,<br><br>     *Defendants*. | Civil Action No. _____<br><br><br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

### CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ...........................................................................1

II.     FEDERAL INVESTIGATION OF ANTICOMPETITIVE PRACTICES IN THE
        FRACKING PRESSURE PUMPING SERVICES MARKET ...........................................2

III.    JURISDICTION, VENUE, AND COMMERCE................................................4

IV.     PARTIES ........................................................................................................5

        A.      Plaintiff ...............................................................................................5

        B.      Defendants ...........................................................................................5

                1.      Halliburton................................................................................5

                2.      Schlumberger............................................................................6

                3.      Baker Hughes ...........................................................................6

V.      AGENTS AND CO-CONSPIRATORS...........................................................7

VI.     CLASS ACTION ALLEGATIONS .................................................................7

VII.    DEFENDANTS' UNREASONABLY RESTRAINED TRADE IN THE FRACKING
        PRESSURE PUMPING SERVICES MARKET................................................9

        A.      Fracking Pressure Pumping Services .....................................................9

        B.      Fracking is Critical to Current and Future Oil and Natural Gas Production ........11

        C.      Defendants Dominate the Fracking Pressure Pumping Services Market..............12

        D.      Defendants Conspired to Restrict Supply with the Purpose and Effect of Raising
                Fracking Pressure Pumping Services Prices in Response to Entry by Independent
                Service Providers ................................................................................13

        E.      Method and Means of the Conspiracy .................................................15

VIII.   CAUSE OF ACTION .....................................................................................16

IX.     PRAYER FOR RELIEF .................................................................................17

X.      DEMAND FOR JURY TRIAL .......................................................................18

Plaintiff, CHERRY CANYON RESOURCES, L.P., a Texas limited partnership, on behalf of itself and all others similarly situated, brings this national Class Action under Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 15 & 26, for treble damages, injunctive relief, costs of suit, pre- and post-judgment interest, and reasonable attorneys' fees, against Defendants HALLIBURTON COMPANY; HALLIBURTON ENERGY SERVICES INCORPORATED; SCHLUMBERGER, N.V.; SCHLUMBERGER HOLDINGS CORPORATION; BAKER HUGHES INCORPORATED; and BJ SERVICES COMPANY, (collectively, "Defendants"), and based upon personal knowledge, information, belief, and the investigation of counsel, alleges as follows:

## I.     NATURE OF THE ACTION

1.     Plaintiff brings this national Class Action on behalf of itself and all others similarly situated against Defendants for their unlawful combination and conspiracy to restrain trade in the market for Fracking Pressure Pumping Services in the United States.  Fracking Pressure Pumping is the process of injecting water and other materials into a well to break apart rock formations and unleash oil and gas.  It is the main step in the hydraulic fracturing process when drilling for oil and natural gas, commonly known as fracking.  By use of capacity restrictions and other means, Defendants, which combined control nearly 60% of the market and constitute 100% of the market participants providing full service operations nationwide, have enabled themselves to overcharge, and actually overcharged, persons and entities that purchased Fracking Pressure Pumping Services in the United States from at least May 29, 2011 through the present ("Class Period").

II.     **FEDERAL INVESTIGATION OF ANTICOMPETITIVE PRACTICES IN THE FRACKING PRESSURE PUMPING SERVICES MARKET**

2.      The Antitrust Division of the United States Department of Justice ("DOJ") has been investigating Defendants and their operations in the Fracking Pressure Pumping Services Market.

3.      On Thursday, July 25, 2013, the DOJ confirmed the Antitrust Division "is investigating the possibility of anticompetitive practices involving pressure-pumping services performed on oil and gas wells."

4.      The confirmation followed disclosures of the federal investigation by two of the three largest providers of Fracking Pressure Pumping Services in the United States—Defendants Baker Hughes and Halliburton.

5.      On July 24, 2013, Defendant Baker Hughes, the second largest provider of Fracking Pressure Pumping Services in the United States, publicly disclosed:

> On May 30, 2013, we received a Civil Investigative Demand ("CID") from the United States Department of Justice ("DOJ") pursuant to the Antitrust Civil Process Act.  The CID seeks documents and information from us for the period from May 29, 2011 through the date of the CID in connection with a DOJ investigation related to pressure pumping services in the United States.  We are working with the DOJ to provide the requested documents and information. We are not able to predict what action, if any, might be taken in the future by the DOJ or other governmental authorities as a result of the investigation.

Baker Hughes, Inc., Quarterly Report (Form 10-Q), at 11 (July 24, 2013).

6.      The next day, on July 25, 2013, Defendant Halliburton, the largest provider of Fracking Pressure Pumping Services in the United States, disclosed that it, too, had received a civil investigative demand from the DOJ Antitrust Division in the second quarter of 2013. Halliburton confirmed the Antitrust Division is investigating anticompetitive conduct by multiple actors; not just unilateral conduct: "We understand there have been other participants in the industry who have received similar correspondence from the DOJ, and we do not believe that we

are being singled out for any particular scrutiny," a Halliburton spokeswoman wrote in a widely circulated email to the press.

7.     That same day, Halliburton pled guilty to destroying evidence in connection with a federal criminal investigation of the Deepwater Horizon disaster in the Gulf of Mexico.  As part of the criminal plea agreement, Halliburton agreed, subject to the court's approval, to pay the maximum-available statutory fine, to subject itself to three years of probation, and to cooperate in the DOJ's ongoing criminal investigation.

8.     Schlumberger, the second largest provider of Fracking Pressure Pumping Services in the United States, on the other hand, gave no public comment on the investigation.  Although Schlumberger filed a Form 10-K Quarterly Report with the United States Securities and Exchange Commission on July 25, 2013, it failed to disclose the existence of the antitrust investigation.  Its report instead focused on Schlumberger's business dealings with Iran.

9.     The significance of the issuance of a civil investigative demand to Baker Hughes and Halliburton should not be understated.  Under the Antitrust Civil Process Act of 1962, 15 USC § 1311, *et seq*., service of a Civil Investigative Demand on Halliburton and Baker Hughes means the Assistant Attorney General in charge of the DOJ Antitrust Division has reason to believe Halliburton and Baker Hughes have documents or other information relevant to such "anticompetitive practices."

### III.   JURISDICTION, VENUE, AND COMMERCE

10.    Plaintiff brings this action under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries inflicted on Plaintiff and the Class by Defendants' violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

11.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26.

12.    Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c) and (d), because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the alleged activity affected interstate trade and commerce in this District.

13.    Defendants' conduct was within the flow of, was intended to, and did, in fact, have a substantial effect on the interstate commerce of the United States, including interstate commerce in this District.   Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on domestic commerce.

14.    During the Class Period, each Defendant and/or one or more of its affiliates used the instrumentalities of interstate commerce, including interstate railroads, highways, waterways, wires, wireless spectrum, and the U.S. mail, to join or effectuate their conspiracy.

15.    This Court has personal jurisdiction over each Defendant, because each Defendant—throughout the United States and including in this District—transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of their illegal scheme and price-fixing conspiracy.   The conspiracy was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

4

IV.    **PARTIES**

A.    **Plaintiff**

16.    Plaintiff Cherry Canyon Resources, L.P., is a limited partnership organized under the laws of the State of Texas.  During the Class Period, Plaintiff directly purchased Fracking Pressure Pumping Services from one or more Defendants in the United States.

B.    **Defendants**

17.    Defendants are three of the largest multinational oil field services companies in the world, and the three largest providers of pressure pumping services for fracking in the United States ("Fracking Pressure Pumping Services Market").  Together Defendants own and control more of the market than all other providers combined—nearly 60% of the market in North America.  Although there are many companies that perform some sort of pressure pumping service, Defendants are the only companies that provide full service operations in all regions of the United States.  The others are merely regional players or specialists lacking market power.

1.    **Halliburton**

18.    Defendant HALLIBURTON COMPANY is a Delaware corporation with its principal executive offices at 3000 North Sam Houston Parkway East, Houston, Texas 77032.

19.    Defendant HALLIBURTON ENERGY SERVICES INCORPORATED is a Delaware corporation with its principal executive offices at 3000 North Sam Houston Parkway East, Houston, Texas 77032.

20.    Defendants HALLIBURTON COMPANY and HALLIBURTON ENERGY SERVICES INCORPORATED together will be referred to as "Halliburton."

21.    Halliburton is the largest provider of Fracking Pressure Pumping Services in the United States, with a 26% market share.

5

### 2.    Schlumberger

22.    Defendant SCHLUMBERGER N.V. is a *naamloze vennootschap* organized under the laws of Curaçao, with its principal executive offices at (i) 300 Schlumberger Dr., Sugar Land, Texas 77478; (ii) 5599 San Felipe, 17th Floor, Houston, Texas 77056; (iii) 42 Rue Saint-Dominique, Paris, France 75007; and (iv) Parkstraat 83, The Hague, The Netherlands 2514 JG.

23.    Defendant SCHLUMBERGER HOLDINGS CORPORATION is a Delaware corporation with its principal executive offices at 300 Schlumberger Dr., Sugar Land, Texas 77478.  It is wholly owned by SCHLUMBERGER N.V.

24.    Defendants SCHLUMBERGER N.V. and SCHLUMBERGER HOLDINGS CORPORATION together will be referred to as "Schlumberger."

25.    Schlumberger is the world's largest oil field services firm.  It is the second largest provider of Fracking Pressure Pumping Services in the United States, with a 19% market share.

### 3.    Baker Hughes

26.    Defendant BAKER HUGHES INCORPORATED is a Delaware corporation with its principal executive offices at 2929 Allen Parkway, Suite 2100, Houston, TX 77019.

27.    Defendant BJ SERVICES COMPANY is a Delaware corporation with its principal executive offices at 4601 Westway Park Blvd., Houston, TX 77041.

28.    On April 28, 2010, BAKER HUGHES INCORPORATED acquired BJ SERVICES COMPANY.  The merger, first announced in August 2009, closed only after a seven-month federal antitrust investigation by the DOJ, which filed an antitrust complaint and settled the matter by consent decree requiring the divestiture of certain oil services assets due to the market power of the companies.

29.    Defendants BAKER HUGHES INCORPORATED and BJ SERVICES COMPANY together will be referred to as "Baker Hughes."

30.      Baker Hughes is the third largest provider of Fracking Pressure Pumping Services in the United States, with a 13% market share.

## V.      AGENTS AND CO-CONSPIRATORS

31.      Other entities and individuals unknown to Plaintiff at this time participated as co-conspirators and performed overt acts in furtherance of the conspiracy.   Whenever reference is made to any act, deed, or transaction of any corporation or partnership, the allegation means the corporation or partnership engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, representatives, parent, predecessors, or successors-in-interest while they were engaged in the management, direction, control, or transaction of business or affairs of the corporation or partnership.

## VI.     CLASS ACTION ALLEGATIONS

32.      Plaintiff brings this action as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and all others similarly situated.   The Plaintiff Class is defined as:

> All persons or entities that directly purchased Fracking Pressure Pumping Services in the United States from one or more Defendants from at least May 29, 2011, through the present.  Excluded from the Class are Defendants and their employees, affiliates, parents, subsidiaries, named and unnamed coconspirators, the United States Government, the Court, and any members of the Court's staff or immediate family.

33.      The Class is so numerous and geographically dispersed that joinder of all members is impracticable.   The Class numbers in at least the thousands, the exact number, identities, and locations of the members being known by Defendants.

34.      Plaintiff is a member of the Class.   Plaintiff's claims are typical of the claims of other Class members, and will fairly and adequately protect the interests of other Class members. Plaintiffs' interests are aligned with, and not antagonistic to, those of other Class members.

7

35.    Plaintiff is represented by competent and experienced in class action litigation, including antitrust class action litigation.

36.    Questions of law and fact are common to Class members.   These common questions relate to the existence of the conspiracy alleged, and the type and common pattern of injuries suffered as a result thereof, and include, but are not limited to:

(i)      Whether Defendants engaged in a contract, combination, or conspiracy to restrain trade;

(ii)     Whether Defendants unreasonably restrained trade;

(iii)    The nature and character of the acts performed by Defendants in furtherance of the alleged conspiracy;

(iv)    Whether the conspiracy had the effect of artificially inflating the price of Fracking Pressure Pumping Services in the United States during the Class Period;

(v)     The measure and amount of damages inflicted on, and suffered by, the Class; and

(vi)    Whether Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

37.    Questions of law and fact common to Class members predominate over any questions affecting only individual members, including the legal and factual issues relating to liability and damages.

38.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiff does not anticipate any difficulty in the management of this action as a class action.

VII.   **DEFENDANTS   UNREASONABLY   RESTRAINED   TRADE   IN   THE   FRACKING PRESSURE PUMPING SERVICES MARKET**

### A.   Fracking Pressure Pumping Services

39.   Hydraulic fracturing (commonly referred to as fracking) is the process of pumping a mixture of water, sand or similar material, and chemical additives, under high pressure into rock formations, to create small interconnecting fractures to increase permeability in targeted subsurface rock formations.   Pumping large quantities of water and certain material at high volume and pressure generates, and increases, production of oil and natural gas.   The pressure pumping process fractures the geological formation under the earth's surface, creating passages (fractures) through which hydrocarbons (*i.e.*, natural gas and oil) are released from the ground and pumped to the surface, as illustrated below.



40.   Water typically makes up 90 percent or more of the liquid phase of fracturing fluids that service providers pump into wells under high pressure.   Sand and other material mixed with the pumped-in water is used to prop open the fractures, while chemical additives reduce friction, control bacteria, decrease corrosion, and serve other purposes.   Some fracturing fluid also contains a gelling agent for viscosity to better able to carry the sand (or "proppant") necessary to hold the fractures open and allow the oil or gas to make its way to the well.   The substantial majority of the fracturing fluids are recovered as the well is brought into production and do not remain in the ground.



41.     For an oil or gas well to be productive, hydrocarbons must flow through rocks in which they are contained (the reservoir) into the well and to the surface.  Much of the oil and gas resources in the United States reside in tight rock formations, which are so impermeable they do not allow oil and gas to flow through the rock to the wellbore.  Reservoir rocks are fractured to enhance their permeability and enable oil and natural gas to flow.  Hydraulic fracturing is employed on both vertical wells and horizontal wells, which are becoming increasingly common in the United States.  Most of these wells would not flow at rates that would make drilling financially feasible without hydraulic fracturing.

42.     Although fracking itself is not a new technology, it did not become a feasible means of deep shale gas production until the late 2000s.  Modern fracking involves drilling vertically into shale formations up to hundreds of thousands of feet deep, and horizontally from 1000 to 6000 feet away from the well.  Fracking also is used to stimulate the flow of energy from

10

previously drilled wells.  Fracking, therefore, can be performed after a well is drilled, cased, and cemented to increase the well's productivity.

**B.    Fracking is Critical to Current and Future Oil and Natural Gas Production**

43.    Today, nearly nine out of ten onshore natural gas and oil wells require fracking. The Fracking Pressure Pumping Services provided by Defendants are essential, therefore, for oil and gas wells to remain or become viable.  The combination of horizontal wells and hydraulic fracturing has led to increased oil and natural gas production and the addition of large new reserves in the United States after many prior years of decline.  With the emerging revolution in the development of shale gas in the United States, fracking will play an even more important role going-forward.

44.    Absent Fracking Pressure Pumping Services, most wells would not produce hydrocarbons at sufficient rates to make the well economical.  Fracking allows what would be otherwise trapped natural gas and crude oil to move more freely from the rock pores to a producing well so hydrocarbons can be brought to the surface at higher rates.

45.    The effect of fracking on the oil and gas economies in the United States has been substantial.  An April 2011 Congressional report notes "[a]s a result of hydraulic fracturing and advances in horizontal drilling technology, natural gas production in 2010 reached the highest level in decades."  Fracking is used in oil and gas producing throughout the United States, as reflected below.



C.   **Defendants Dominate the Fracking Pressure Pumping Services Market**

46.     Defendants Halliburton, Schlumberger, and Baker Hughes are the three largest participants in the Fracking Pressure Pumping Services Market.  In North America as a whole, Defendants' collective market share is nearly 60%.

47.     Defendants' market shares, substantial as they are, understate their market power. The industry refers to Defendants as the "Majors" for a reason—each has a service scope and geographic reach the smaller participants do not have the ability to match.  Although there are about 100 companies that perform some sort of pressure pumping service, known as "Independents," Defendants, the Majors, are the only companies that provide full service operations in all regions of the country.   Independents, on the other hand, often lack the horsepower necessary to provide the service in a timely or efficient manner.  Thus, the Majors account for 100% of the market participants providing full service operations nationwide.

**D.  Defendants Conspired to Restrict Supply and Otherwise Restrain Trade with the Purpose and Effect of Raising Fracking Pressure Pumping Services Prices in Response to Independents Entering the Market**

48.    After a period of declining prices in 2008-2009 in the wake of the global recession, prices for Fracking Pressure Pumping Services turned around in 2010.   Indeed, demand and prices were soaring as demand far outstripped supply prior to and during the early part of the Class Period in 2011.

49.    The rising demand and prices drew new entrants to the Pressure Pumping Services Market.  While the new entrants could not offer the breadth of services or geographic reach to compete with the Majors, the new entrants in the market, the Independents, caused a temporary oversupply of Fracking Pressure Pumping Services.  This temporary "disruption" of the market (from Defendants' perspective) led to a modest decrease in prices and a modest decrease in Defendants' market shares, as the following charts demonstrate:



**Price Index**



**<u>Market Shares</u>**



50.     In response, Defendants colluded to restrict and manipulate supply in order to increase prices and market share toward their pre-entry "boom year" levels..

51.     They succeeded.  Despite the continued presence of numerous smaller additional service providers, Defendants' prices and market shares have increased—both individually and collectively, as reflected in the chart above.  At the same time, the Independents' collective market share has decreased, as also shown above.  Each of the three Majors' market shares increased (and continues to increase) on a virtually uniform trajectory, as shown above.  There are no meaningful market share shifts between or among the Majors at all.  This, particularly combined with a reversal and upward trend in pricing for the majors, is indicative of conspiracy. Defendants have exploited their collective market power to harm competition.

**E.      Method and Means of the Conspiracy**

52.     For purposes of forming and carrying out their combination and conspiracy, Defendants did those things they combined and conspired to do during the Class Period, including, among other things:

(i)      Participating in meetings, conversations and communications to discuss pricing and output in the market for Fracking Pressure Pumping Services in the United States;

(ii)     Agreeing, during those meetings, conversations and communications, on prices and output restrictions in the market for Fracking Pressure Pumping Services in the United States;

(iii)    Selling Fracking Pressure Pumping Services in the United States at supracompetitive prices;

(iv)     Accepting payment for Fracking Pressure Pumping Services in the United States at supracompetitive prices; and

(v)      Engaging in meetings, conversations, and communications elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon output restriction and price-fixing scheme.

15

**VIII.**       **CAUSE OF ACTION**

**COUNT ONE**

**SHERMAN ACT § 1: CONSPIRACY IN RESTRAINT OF TRADE**

53.     Plaintiff re-alleges each allegation set forth above, as if fully set forth herein.

54.     Defendants entered into and engaged in a conspiracy in restraint of trade in violation of Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1, during the Class Period.

55.     Defendants intended to, and actually did, unreasonably restrain trade by engaging in a continuing combination and conspiracy during the Class Period. The conspiracy is a *per se* violation of Section 1 of the Sherman Act.

56.     Defendants shared a conscious commitment to a common scheme designed to achieve the unlawful objective of artificially fixing, raising, pegging, maintaining, and stabilizing the price and output of Fracking Pressure Pumping Services in the United States during the Class Period.

57.     Defendants, by their unlawful conspiracy and overt acts in furtherance thereof, did in fact artificially fix, raise, peg, maintain, and stabilize the price and output of Fracking Pressure Pumping Services sold directly to Plaintiff and other Class members, who paid artificially inflated prices in the United States during the Class Period.

58.     The conspiracy proximately caused substantial anticompetitive effects in the market for Fracking Pressure Pumping Services in the United States. There is no legitimate business justification for, or procompetitive benefits caused by, Defendants' unreasonable restraint of trade. Any ostensible or proffered procompetitive benefit was or is pretextual and/or could have been achieved by less restrictive means.

16

59.     The conspiracy has injured competition and consumers in the market for Fracking Pressure Pumping Services in the United States.

60.     Plaintiff and Class members have been injured in their business and property by reason of Defendants' violation of Section 1 of the Sherman Act, within the meaning of Section 4 of the Clayton Act, 15 U.S.C. § 15.

61.     Plaintiff and Class are threatened with further injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act, within the meaning of Section 16 of the Clayton Act, 15 U.S.C. § 26.

62.     Plaintiff and Class members have been deprived of the benefits of free, open, and unrestricted competition.  The injury to Plaintiff and Class members is of the type the antitrust laws were designed to prevent and flows from that which makes Defendants' acts unlawful.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for itself and Class members, respectfully requests that (i) Defendants be cited to appear and answer this lawsuit; (ii) this action be certified as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; (iii) Plaintiff be designated the Class Representative; and (iv) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, for itself and Class members, further requests that upon final trial or hearing, judgment be awarded against Defendants, jointly and severally, in favor of Plaintiff and Class members:

A.      That Defendants' conspiracy, and acts done in furtherance thereof, be adjudged to have violated Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1;

B.      That the Court enjoin Defendants and their agents from their continuing conspiracy and violations of law;

C.      That the Court award damages and injunctive relief to Plaintiff and Class members in an amount to be proved at trial, to be trebled according to law, plus pre-judgment

17

interest, post-judgment interest, attorneys' fees, litigation expenses and costs of suit under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. § 15 and 26; and

D.     That Plaintiff and Class members have such other, further and different relief as the Court may deem just and proper.

## X.     DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues so triable.

Dated:  July 31, 2013

Respectfully submitted,

By:    s/ Robert C. Hilliard
     Robert C. Hilliard
     State Bar No. 09677700
     Federal ID No. 5912
     Email: bobh@hmglawfirm.com
     Catherine Tobin
     State Bar No. 24013642
     Federal ID No. 25316
     Email: catherine@hmglawfirm.com
     Rudy Gonzales
     State Bar No. 08121700
     Federal ID No. 1896
     Email: rudyg@hmglawfirm.com
     John B. Martinez
     State Bar No. 24010212
     Federal ID No. 23612
     Email: john@hmglawfirm.com
     HILLIARD MUNOZ GONZALES, LLP
     719 S Shoreline Blvd # 500,
     Corpus Christi, Texas 78401
     Tel:  (361) 882-1612
     Fax:  (361) 882-3015

     Steve D. Shadowen
     HILLIARD & SHADOWEN, LLC
     39 W. Main Street
     Mechanicsburg, Pennsylvania 17055
     Tel:  (855) 344-3298
     steve@hilliardshadowen.com

18

Richard L. Coffman
THE COFFMAN LAW FIRM
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
(409) 833-7700
(866) 835-8250 Fax
rcoffman@coffmanlawfirm.com

**Counsel for Plaintiff and the Proposed Class**

**Of Counsel**

Jay W. Eisenhofer
Linda P. Nussbaum
Peter A. Barile III
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
jeisenhofer@gelaw.com
lnussbaum@gelaw.com
pbarile@gelaw.com